OPINION
FACTS
The facts in this case indicated that Ramona Iceman is a Tribal member who resides in Poplar, Montana. On November 1, 1989 she entered into a lease with the Fort Peck Housing Authority for Unit 14-01 located in Poplar, Montana.
On June 18, 1993, Ramona Iceman plead guilty to three counts of Distribution of Marijuana in the United states District Court in Billings, Montana. These sales took place during August and September of 1990 while Ms. Iceman resided in her lease premises. Prior to her indictment Ramona Iceman voluntarily entered into a drug and alcohol treatment program at Spotted Bull Treatment Center in Poplar, Montana.
On September 21, 1993, by reason of her violation of FPHA drug elimination policy, a notice of Termination of Lease was served upon Ramona Iceman. Said Notice gave Ms. Iceman the opportunity for a hearing within thirty days.
On October 15, 1993 Ramona Iceman filed with the Fort Peck Housing Authori *127 ty a grievance form, on said form, Ramona Iceman stated: “I feel that I shouldn’t be evicted because on your drug elimination policy it says that if I get counseling for my addiction you can’t evict me and my family from our home.”
A meeting was held on November 12, 1993 wherein the Fort Peck Housing Authority Board of Commissioners voted to allow Ramona Iceman to stay in her home until April 15, 1994, and continue her grievance hearing until that date. Her treatment and counseling, were discussed at the meeting and she was directed to continue with her treatment program and provide documentation of the counseling at the continued grievance hearing on April 15, 1994. She was advised at the meeting of November 12, 1993 that the Fort Peck Housing Authority Board would make a final decision on her grievance April 15, 1994.
At the grievance hearing on November 12, 1993 Ramona Iceman had the opportunity to present evidence rebutting the charge that she illegally sold marijuana from her home. However, she did not dispute the fact that she sold drugs from her home. There is no indication that a distinction was drawn at that hearing between “marijuana” and/or “narcotic drugs”. However, the Board of Commissioners made efforts to determine whether the Appellant’s efforts to seek treatment would bring her within the exception for drug users seeking treatment. At the hearing one of the Board Members moved to allow Ramona to stay in the lease premises until April 15, 1994, “and in the mean time seek counseling and provide” documentation and at that time the Board will decide.” The Motion was adopted by the Board. One Board Member expressed concern over the decision and stated, “I think at our next meeting we should have it on the agenda whether or not we should vote to enforce this.”
On January 28, 1994 the Board of Commissioners met again, and without notice to Ramona Iceman, overturned its previous decision to allow her to stay in her lease premises until April 15, 1994. Additionally, at the January 28, 1994 meeting the Board of Commissioner voted to terminate her lease. Ramona Iceman was not notified of the meeting and had no opportunity to heard.
Ramona Iceman was notified that the Board had rescinded its initial decision in writing by a letter dated February 4, 1994. The letter also provided that Ramona had until February 21, 1994 in which to vacate the unit. Ramona Iceman and her family continued to occupy the premise and the Fort Peck Housing Authority filed a Complaint for Eviction on April 28, 1994 and a hearing was held on May 5, 1994 in Tribal Court before the Honorable Robert E. Welch. At the May 5th hearing the Petitioner for Eviction, Fort Peck Housing Authority, presented evidence showing that Ramona Iceman knowingly possessed and sold marijuana from the lease premises while she was a tenant under the lease. Additionally, evidence was presented showing that Ramona Iceman was indicted, plead guilty and was convicted of three counts of Distribution of Marijuana in the United States District Court. At that hearing Ms Iceman did not dispute the fact of the sales of marijuana, but rather argued that FPHA had violated her due process rights by not granting her a proper hearing, the Tribal Court rejected her due process argument.
During the course of the hearing, Ramona Iceman submitted documentation of her completion of alcohol and chemical dependency counseling session through Spotted Bull Treatment Center. The Fort Peck Housing Authority Director, Iva Grainger *128 testified that the Fort Peck Housing Authority Board of Commissioners had not notified Ramona Iceman that her grievance would be brought up at the meeting on January 28, 1994. Ramona Iceman brought a Motion to Dismiss which was denied by Judge Welch. Judge Welch also granted the Fort Peck Housing Authority request for Eviction. An Order for Eviction was seived on Ramona Iceman on August 10, 1994. By Stipulation of the parties, it was agreed that the Appellant could be granted a stay pending appeal.
There is no indication in the record that the Fort Peck Housing Authority or the Tribal Court determined whether marijuana is distinguished from narcotic drugs.
ISSUE
Whether Ramona Iceman was denied a full and complete opportunity to be heard?
RULES OF LAW
In order to answer the question of law in this case, we must first examine the following rules of law and determine whether FPHA violated federal or FPHA regulations by not granting Ramona Iceman an opportunity to be heard at the January 28, 1994 meeting.
24 CFR § 950.340(a)(1), provides that Indian Housing Authority is required to adopt and promulgate grievance procedures which are appropriate to local circumstances. The procedures must comply with the Indian Civil Rights Act and shall assure that the tenants will:
(i) Be advised of the specific grounds of any proposed adverse action;
(ii) Have an opportunity for a hearing before an impartial party upon timely request;
(iii) Have an opportunity to examine any documents or records or regulations related to the proposed action;
(iv) Be entitled to be represented by another person of their choice at any hearing;
(v) Be entitled to ask questions of witnesses and have others make statements on their behalf; and
(vi) Be entitled to receive a written decision on the proposed action.
OPINION
1. THE FORT PECK HOUSING AUTHORITY COMPLIED WITH RULES AND REGULATIONS AS TO THE NOVEMBER 12, 1993 HEARING.
The Fort Peck Housing Authority did comply with the above stated rules when they gave notice to Ramona Iceman of the November 12, 1993 hearing. The Housing Authority gave her an opportunity to be heard at the November 12, 1993 hearing; disclosed to her the specific grounds of their proposed action to evict; gave her opportunity to examine documents and records and regulations related to the action; allowed her to be represented by another person; allowed her to ask questions of witnesses and have others make statements on her behalf.
Ramona Iceman was issued a Notice of Termination based on her violations of the drug elimination policy, and that she responded to the Notice of Termination by filing a Grievance and thereafter she was granted a grievance hearing on November 12, 1993. The facts in this case indicate that at the November 12, 1993 hearing Ramona Ieeman presented a legal argument indicating that the eviction was not proper because she voluntarily sought treatment for drug abuse; her argument *129 was supported by the Housing Authority drug elimination policy exception.
There is nothing indicated in the facts that Ramona Iceman or the Fort Peck Housing Authority Board of Commissioners considered whether marijuana is or is not a narcotic drag.
The meeting of November 12, 1993 apparently was not a full and complete hearing. By motion of a member of the board of commissioners the meeting was continued until April 15, 1994.
2. THE FORT PECK HOUSING AUTHORITY DID NOT COMPLY WITH THE FEDERAL RULES AND THE HOUSING AUTHORITY EVICTION PROCEDURE FOR THE JANUARY 28, 1994 MEETING.
The January 28, 1994 meeting was pivotal in determining whether Ramona Iceman and family should be evicted. At that meeting legal theories not fully discussed or decided at the November 12, 1993 meeting were finally decided. Ramona Iceman had no opportunity to debate, refute, or contravene the legal theory that the exception in the drug elimination policy did not apply to her eviction. Whether or not she could have prevailed is another matter. This court need not decide whether she falls into the exception; of tantamount concern is whether she was given an opportunity to be heard.
The Tribal Court found she had an opportunity to be heard at the November 12, 1993 hearing, that is true, however, she was denied that same opportunity to he heard at the January 28, 1994 hearing wherein an adverse action was taken rejecting her theory that she was protected by the voluntary treatment exception. At the January 28th meeting she had no opportunity to present witnesses or legal arguments to support her defense.
The burden on the housing authority to give notice prior to the January 28, 1994 meeting would have been minimal.
Nothing in this opinion precludes FPHA from now issuing a notice and opportunity to be heard and nothing here precludes Ramona Iceman from developing and presenting arguments to the Housing Board as to why she should not be evicted.
The regulations at the least require that the Housing Authority grant Ramona Iceman a full and complete opportunity to be heard. Not having notice and opportunity to be heard on January 28, 1994, Ramona Iceman was not able to present witnesses; not able to testify; not able to have legal representation and consequently her legal representation was not able to present arguments which may have contravened the legal basis for her eviction. Additionally, she was not made aware of any specific ground of any proposed adverse action to be taken on January 28, 1994; by its own motion the Fort Peck Housing Authority Board of Commissioners at the November 12, 1993 hearing allowed Ramona Iceman additional time to present a factual and legal argument in order to preserve her contractual leasehold rights, then housing preempted her opportunity to present those arguments.
3. THE FORT PECK HOUSING AUTHORITY WITHOUT NOTICE TO RAMONA ICEMAN DECIDED THAT ITS NOVEMBER DECISION WAS CONTRARY TO ITS REGULATIONS AND POLICIES.
The Housing Authority argues that nothing in either the Federal Indian Housing Regulations or the Fort Peck Housing Authority Grievance Policy prohibits the Board of Commissioners from reconsidering and rescinding its initial decision if that decision is contrary to the Fort Peck *130 Housing Authority’s own policy or Federal Law. The Housing Authority further argues that its grievance policy requires the Board to base its decision on “applicable laws, regulations, and policy” and thus when and initial decision is contrary to such laws, regulations, and policy, the Board is duty-bound to take appropriate action to correct it. The Housing Authority’s argument is defective for two reasons:
1. The Housing Authority must show that rescinding the November 12, 1993 decision was based on law contrary to their decision. Here, the argument could have been made at the January 28, 1994 meeting before the Housing Board of Commissioners that Ramona Iceman falls into the drug elimination policy exception based on the theory that marijuana is not a narcotic drag. Ramona Iceman could have also argued equitable estoppel. Neither argument was ever presented before the Housing Board. This Court does not at this time make a determination on either theory, nonetheless, the Housing Authority had a duty to hear Ramona’s arguments and then decide whether them decision of November 12, 1993 was contrary to the Housing Authorities policy, or Federal Law.
2. A full, complete and fair opportunity to be heard was not granted to Ramona Iceman. On November 12, 1993 Ramona argued before the Board that she should fall in the exception and that she should not be evicted because she was seeking treatment for drag abuse; apparently (at that point in time) the Board agreed. Further, at that time the Board was not aware of any legal theory which would preclude them from allowing her to take advantage of the drug elimination policy exception. Nonetheless, the Board granted her an extension on her hearing; which held in abeyance her opportunity to be heard.
4. THE FORT PECK HOUSING AUTHORITY FAILED TO FOLLOW ITS OWN POLICY WHEN IT ACTED TO EVICT RAMONA ICEMAN WITHOUT GIVING HER A WRITTEN NOTICE OF THE DATE AND TIME OF THE JANUARY 28,1994 HEARING.
Fort Peck Housing Authorities Grievance Policy provides:
[V.E.l] Upon timely receipt of a hearing request; a hearing shall be scheduled before the Board of Commissioner, and written notice of the date and time of the bearing shall be mailed to the aggrieved party at least five (5) business days before the date of the hearing.
It is clear hear that the grievance policy requires that a hearing shall be scheduled. Initially, Ramona Iceman had a scheduled grievance hearing on November 12, 1993, that hearing was continued and re-scheduled for April 15, 1994. The Board cannot unilaterally change that schedule without granting Ramona Iceman notice and opportunity to be heard. The facts here indicate that Ramona Iceman’s opportunity to complete her grievance hearing was “short circuited”, the denial of notice and opportunity to be heard is fundamentally unfair.
For all these reasons the Tribal Court judgment ordering her eviction is overruled.